**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

----------------------------------------------------------------------X

KILWINS CHOCOLATES FRANCHISE, INC.,
a Michigan corporation.

     Plaintiff

                                      Case No. 1:26-cv-06717

vs.


AQIL IMDAD,

A & Z ICE CREAM PARLOR, LLC,
an Illinois limited liability company,

     and

Does 1-10,

     Defendants.

---------------------------------------------------------------- X

**COMPLAINT**

The plaintiff Kilwins Chocolates Franchise, Inc. ("KCF"), for its Complaint against the defendants Aquil Imdad ("Imdad"), A & Z Ice Cream Parlor, LLC ("A & Z"), and Does 1-10, alleges as follows:

**PRELIMINARY STATEMENT**

This action arises out of the defendants' repeated unauthorized sale of KILWINS brand ice cream and unauthorized use of the federally registered mark KILWINS and related marks. Imdad is the owner of A & Z, which operates an ice cream parlor in South Barrington, IL under the name "Scoop Society." Imdad claims to own a total of five ice cream parlors. KCF is the owner and franchisor of the KILWINS system of shops featuring chocolates, ice cream, and confections.

1

KILWINS brand ice cream is sold exclusively at KILWINS shops and through no other chains of distribution.

Back in 2023, Imdad obtained KILWINS brand ice cream through back channels that he later misrepresented, and sold ice cream using the Kilwins Marks (defined below) at his Scoop Society store. KILWINS brand ice cream is distributed only to legitimate KILWINS shops in tubs bearing the Kilwins Marks, and is handled, preserved, and presented to the public under strict standards developed and implemented by KCF. The defendants did not follow those standards, and KCF had no way to control the nature and quality of the ice cream and service being offered to the public.

Despite representing to KCF that he had ceased his sale of KILWINS brand ice cream, Imdad continued to sell KILWINS brand ice cream from tubs bearing the KILWINS name, but still without following the procedures that KCF requires at authorized KILWINS shops to protect the nature and quality of the ice cream being sold under its marks. KCF filed suit in this district to put a stop to the defendants' unauthorized use of the KILWINS Mark and sale of KILWINS brand ice cream. When the defendants stopped their sale of KILWINS ice cream, KCF dismissed the earlier suit.

But KCF recently discovered that the defendants are once again using the Kilwins Marks to sell KILWINS brand ice cream at their Scoop Society store with full knowledge that their use of the Kilwins Marks is not authorized, their resale of KILWINS brand ice cream is not authorized, and KCF has expressly objected to their conduct. KCF requires immediate relief and is entitled to preliminary and permanent injunctive relief, treble damages, declaratory relief, and attorneys' fees and costs.

## JURISDICTION AND VENUE

1. This is a civil action arising under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. and state common law.

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

3. Jurisdiction exists under 28 U.S.C. §§ 1331 and 1367 because this case arises under 15 U.S.C. §§ 1501 *et seq*. and the Court has supplemental jurisdiction over state law claims related to the federal claims.

4. Jurisdiction exists under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. KCF is a corporation organized under the laws of Michigan with its principal place of business in Petoskey, Michigan. The defendant Imdad is a citizen and resident of Illinois. A & Z is a limited liability company organized under the laws of Illinois whose sole member, on information and belief, is Imdad. A & Z's principal place of business is South Barrington, IL. The Doe defendants are Imdad's other entities, who on information and belief are citizens of Illinois by virtue of Imdad's sole or controlling ownership of them, as well as KILWINS franchisees who may have been involved in the unauthorized sale of ice cream to Imdad and his entities.

5. Personal jurisdiction exists over the defendants, and venue is proper in this Court. The defendants are all citizens of this state and reside in this district, and the events at issue took place predominantly in this district.

## THE KILWINS SYSTEM

6. KCF is the franchisor of the KILWINS franchise system. KCF owns several federal registrations for the mark KILWINS, as used in connection with KILWINS shops (the "Kilwins

Marks"). The first registration for the mark KILWINS, Reg. No. 1276447, was issued on May 1, 1984. One of the registrations for the Kilwins Marks is Reg. No. 4088099 is for food products, specifically including ice cream, and was granted on January 17, 2012. These two registrations, as well as many others for the Kilwins Marks, are incontestable pursuant to 15 U.S.C. § 1065.

7. KCF licenses others to use the Kilwins Marks and operate KILWINS shops. KCF and its licensees have operated KILWINS shops since 1981. There are 189 KILWINS shops throughout the country, including 185 owned and operated by KILWINS franchisees. There are currently 13 franchised KILWINS shops in Illinois.

6. KILWINS shops specialize in the sale of KILWINS brand original recipe ice cream, fudge, handmade chocolates, and other confections. KILWINS shops are operated in accordance with KCF's detailed standards and specifications. KCF licenses to franchisees the Kilwins Marks, as well as the trade dress, recipes, methods, and specifications that KCF has developed (the "Kilwins System").

7. KILWINS shops and products are distinctive. The recipes, specifications, trade dress, and other aspects of the Kilwins System are the product of substantial investment by KCF, have developed substantial goodwill, and have immeasurable value to KCF.

8. The Kilwins Marks have become synonymous in the minds of consumers with the high-quality products and services that are offered at legitimate, licensed KILWINS shops. The Kilwins Marks have achieved secondary meaning.

9. KCF provides its franchisees with detailed specifications concerning the sale of ice cream. These include standards for the upkeep of ice cream cases, maintaining the proper temperature in freezers, the proper placement of flavors in the dipping case, the proper procedure for maintaining ice cream tubs to avoid buildup around the rim from falling into the ice cream, the

proper procedure for changing out tubs, the proper rotation of ice cream in the freezer, the proper handling of ice cream while serving customers, procedures for customer complaints about ice cream, and the proper communication to customers about allergens and dietary concerns.

10. KILWINS brand ice cream is sold to the public only at authorized KILWINS retail shops. Both by its standards and in its franchise agreements, KCF prohibits the sale of its ice cream to any customer that sells, resells, or intends to resell it. KCF's stated policy is that customers should enjoy KILWINS ice cream in KILWINS stores to ensure that the ice cream is handled and delivered in accordance with KCF's standards. KILWINS ice cream is not sold through any channels other than through authorized KILWINS stores.

## THE DEFENDANTS' INITIAL UNAUTHORIZED SALE OF KILWINS BRAND ICE CREAM.

11. In August 2023, KCF became aware of an ice cream parlor in South Barrington, IL called Scoop Society, that was prominently displaying a sign bearing the KILWINS name and selling ice cream that purported to be KILWINS brand ice cream.

12. KCF then confirmed that the Scoop Society store was selling ice cream from tubs bearing the Kilwins Marks and with lot numbers that matched the numbers that are placed on authentic KILWINS ice cream.

13. The Scoop Society store was not following, and has never followed, KCF's requirements for the handling, preservation, and presentation of KILWINS ice cream. KCF has no control over the nature and quality of the goods and services being offered at the Scoop Society store in general, or in connection with the sale of KILWINS brand ice cream in particular. Details such as ingredient lists, nutrition information, and other key consumer data were neither verified nor ascertainable.

14. On or about August 16, 2023, KCF, by its counsel Lee J. Plave, sent a cease-and-desist letter to the defendants. The letter advised them that they were not authorized to sell KILWINS ice cream and demanded that the defendants cease selling KILWINS brand ice cream, disclose to KCF the source of the KILWINS ice cream, and confirm in writing that they would comply by returning a signed copy of the letter.

15. On August 21, 2023, the defendant Imdad sent a text message to Mr. Plave confirming receipt of the letter and indicating that his lawyer would be calling "in a few days." When Mr. Plave texted requesting the name of Imdad's lawyer, Imdad responded:

> *You have my promise*
> *My Attorney will be contacting*
> *your office today!!!!!!!!!!*
> *i am extremely busy at my*
> *primary job*
> *My 5 ice cream shops are side*
> *business*
> *We will do exactly what you want*
> *Done*
> *i don't want any trouble sir.*
> *But you gonna have to be little*
> *Patient.*
> *i picked up your Fed Ex mail last*
> *night and faxed it to my Attorney*
> *this Morning. We are gonna*
> *respond to you as soon as*
> *possible. (sic)*

16. The next day, August 22, 2023, Imdad identified his lawyer as Margaret Christy and promised that his lawyer "will be contacting you today." When no lawyer for any of the defendants contacted KCF's counsel that day or the following week, Mr. Plave left a voicemail and sent an email (attaching a copy of the cease and desist letter) to Ms. Christy on August 29, 2023. That afternoon, Ms. Christy called Mr. Plave and promised to follow up with her client.

17. On September 1, 2023, Ms. Christy e-mailed Mr. Plave, and in her e-mail, Mr. Christy wrote that Mr. Imdad had complied with the demands set forth in Mr. Plave's August 16, 2023 cease and desist letter. Ms. Christy attached a copy of the cease and desist letter signed by Imdad to confirm his agreement to comply, and to demonstrate that he had complied.

18. In fact, Imdad had not complied with the demands contained in the cease-and-desist letter as of September 1, 2023.

19. Imdad covered over, but did not remove, the KILWINS sign.

20. Imdad continued to sell KILWINS brand ice at his Scoop Society ice cream parlor. Photos show that Imdad also displayed the trademarks of three other brands at his Scoop Society ice cream parlor: "Baskin-Robbins", "Oberweis", and "Starbucks".

21. Imdad provided a false story about the source of the KILWINS ice cream he was selling. He claimed that the source of the KILWINS ice cream came from a truck driver who brought the ice cream from North Carolina and/or Florida.

22. KCF's investigation revealed that Imdad's story about the source of his KILWINS ice cream was false. In fact, Imdad purchased KILWINS ice cream from a KILWINS franchisee in Illinois (the "Illinois Franchisee"). On information and belief, Imdad approached the Illinois Franchisee posing as a caterer called "AJ Green Catering" and claiming to be "AJ Green." Imdad told the Illinois Franchisee that he wanted to buy a large quantity of KILWINS ice cream to have on hand for use at large catering functions.

23. The caterer's business card identified him as "AJ Green" and included the name "Aqil" as the owner/operator, an e-mail address that included defendant Imdad's first name "Aqil" (aquiloo7@yahoo.com), and also included a phone number that is, in fact, defendant Imdad's phone number.

24. On information and belief, Imdad lied to the Illinois Franchisee about his identity and the stated use of the KILWINS brand ice cream he proposed to purchase because he knew that the Illinois Franchisee was not authorized to sell KILWINS ice cream to a buyer other than a KILWINS franchisee who planned to resell it at retail, and erroneously believed that the Illinois Franchisee was authorized to sell to a buyer who planned to use it at catering functions.

25. Section 1.4 of the Illinois Franchisee's Kilwins Franchise Agreement provides, in part:

> 1.4 <u>Limits on Where You May Sell</u>.  You agree that:
>
> \*          \*          \*          \*
>
> 1.4.2.  You will only offer and sell items (including Approved Products) face-to-face to retail customers for consumption on the Store's premises, for personal, carry-out consumption, and delivery service in a manner that complies with the standards set out in the Manual (as defined in Section 3.3 below);
>
> \*          \*          \*          \*
>
> 1.4.4  You will not give, sell, or otherwise provide Approved Products to end-users or any other entities that sell, resell, or use (or that plan to sell, resell or use) the Approved Products (for example, gift shops and/or similar type stores, hotels, or restaurants), except as provided in Section 1.6 below.

26. On information and belief, whether or not Imdad was aware of this specific language in the Illinois Franchisee's Franchise Agreement, he was aware of a restriction of this kind placed on KILWINS franchisees, and for that reason, intentionally misrepresented his identity and his planned use of the KILWINS ice cream.

27. On information and belief, Imdad intentionally lied about the source of the KILWINS ice cream he was selling to throw KCF off the track and enable Imdad to continue purchasing and reselling KILWINS ice cream from the Illinois Franchisee.

28. Indeed, in late October 2023, after misrepresenting to KCF and its counsel about the source of the KILWINS ice cream, Imdad attempted to make another purchase of 92 tubs of KILWINS ice cream from the Illinois Franchisee.

29. As of November 30, 2023, Imdad was continuing to sell KILWINS brand ice cream under a different name. The KILWINS brand ice cream that is being sold under a different name in the Scoop Society store contains the KILWINS lot numbers. The KILWINS brand ice cream that is being sold is several months old, and is not being stored, handled, or sold in accordance with KCF's standards.

30. On information and belief, Imdad knew that he did not have the right to use the KILWINS name and mark, and also knew that he did not have the right to display the KILWINS name and mark at his Scoop Society store.

## THE PRIOR LAWSUIT

31. On November 30, 2023, KCF filed suit against the defendants. That suit was captioned *Kilwins Chocolates Franchise, Inc., v. Aquil Imdad, et al.*, No. 1:23-cv-16385 ("*Imdad I*"). KCF filed an Amended Complaint in *Imdad I* on December 19, 2023.

32. KCF was able to serve process on the defendant A & Z on January 8, 2024.

33. After KCF served A & Z, the defendants ceased their use of the KILWINS Marks and their sale of KILWINS ice cream.

34. KCF was unable to serve process on the defendant Imdad. The process server reported that Imdad was never found at his home or office, despite repeated attempts. On information and belief, Imdad became aware of *Imdad I* by virtue of the service on A & Z.

35. Because the defendants were no longer using the KILWINS Mark or selling KILWINS ice cream, and because of the difficulty in serving Imdad personally, KCF determined

that it was not necessary to pursue *Imdad I* and filed a notice of voluntary dismissal without prejudice. (*Imdad I*, Dkt. 25).

## THE DEFENDANTS' RESUMPTION OF THEIR IMPROPER USE OF THE KILWINS MARKS AND SALE OF KILWINS ICE CREAM

36.     On or about May 11, 2025, KCF became aware that the defendants were again selling KILWINS ice cream using the KILWINS Mark at their Scoop Society store. The KILWINS franchisees from the Arlington Heights, IL KILWINS store went into the defendants' Scoop Society store and saw the KILWINS name being used in conjunction with the sale of KILWINS ice cream. The Arlington Heights, IL franchisee is not the Illinois Franchisee that sold KILWINS ice cream to the defendants in 2023.

37.     The KILWINS name is being used on labels showing the flavors of each tub of ice cream on display. For example, one label says "KILWINS Mud Pie" and another says "KILWINS Tracks."

38.     The tubs containing these and other ice cream flavors of the Scoop Society store contain markings that identify the ice cream as having been manufactured for the KILWINS system for sale only in KILWINS stores. The lot numbers show that the ice cream was manufactured and sold in 2023.

39.     The KILWINS brand ice cream being sold in the Scoop Society store has not been kept or cared for in accordance with the specifications of the KILWINS system. It is visually unappealing, discolored, and appears not to have been stored in cold enough temperatures, such that it has thawed and refrozen. The KILWINS standards would not permit the sale of ice cream manufactured so long ago and in such poor condition. The ice cream being sold by the defendants under the KILWINS name reflects poorly on, and is doing harm to, the KILWINS brand and the KILWINS Marks.

10

40. The defendants are using the KILWINS Marks and selling KILWINS ice cream with knowledge that they have no right to do so and with knowledge of KCF's express objection. KCF is suffering irreparable harm.

## COUNT ONE

### (Federal Trademark and Service Mark Infringement)

41. KCF re-alleges each and every other paragraph of this Complaint.

42. The defendants are continuing to use and display the KILWINS Marks without authorization or license from KCF. They are selling ice cream bearing the mark KILWINS without authorization or license from KCF, and are not following the procedures and requirements that KCF has in place for authorized resellers of KILWINS ice cream as to the handling, preservation, and presentation of KILWINS ice cream.

43. The defendants' continued use of the KILWINS Marks, without right, is likely to cause confusion in the public mind concerning the source, affiliation, or sponsorship of goods and services being offered under the KILWINS Mark, and is likely to cause the public to believe, contrary to fact, that the defendants are authorized to sell KILWINS ice cream and are doing so in conformity with the requirements of the KILWINS System.

44. The defendants are willfully, intentionally, and knowingly using trademarks, service marks and designations that are identical to, substantially indistinguishable from, or confusingly similar to the KILWINS Mark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. The defendants' conduct constitutes counterfeiting within the meaning of 15 U.S.C. § 1127, in violation of 15 U.S.C. § 1114(1)(a).

45. The defendants' conduct is causing irreparable injury to KCF's reputation and goodwill, which will continue unabated unless enjoined by this Court. In addition, the defendants' conduct is causing monetary damage to KCF in an amount to be proven at trial.

## COUNT TWO

### (Federal Unfair Competition)

46. KCF re-alleges each and every other paragraph of this Complaint.

47. The defendants' continuing unauthorized use of the KILWINS Marks in connection with the unauthorized sale of KILWINS ice cream constitutes false designation of origin, false or misleading descriptions of fact, and false or misleading representations of fact, which are likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association between the defendants and KCF on the other hand, or as to the origin, sponsorship, or approval of the goods or services being offered by the defendants, or as to KCF's approval of the defendants' activities.

48. The defendants' conduct violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

49. The defendants' conduct is causing irreparable injury to KCF's reputation and goodwill, which will continue unabated unless enjoined by this Court. In addition, the defendants' conduct is causing monetary damage to KCF, in an amount to be proven at trial.

## COUNT THREE

### (Federal Reverse Passing Off)

50. KCF re-alleges each and every other paragraph of this Complaint.

12

51. The defendants' sale of KILWINS brand ice cream under a different name constitutes reverse passing off in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

52. The defendants' conduct is causing irreparable injury to KCF's reputation and goodwill, which will continue unabated unless enjoined by this Court. In addition, the defendants' conduct is causing monetary damage to KCF, in an amount to be proven at trial.

## COUNT FOUR

### (Common Law Trademark and Service Mark Infringement)

53. KCF re-alleges each and every other paragraph of this Complaint.

54. The KILWINS Marks are distinctive and have developed secondary meaning in the public mind. Consumers have come to know and recognize the KILWINS Marks as identifying the operation of stores by KCF and its franchisees, as well as the goods and services provided by KCF and its franchisees at KILWINS stores.

55. The public is likely to be confused, deceived, or otherwise manipulated by the defendants' unauthorized use of the KILWINS Marks. Therefore, the defendants' use of the KILWINS Marks without right, license, or authorization constitutes common law service mark infringement.

56. The defendants' conduct is causing irreparable injury to KCF's reputation and goodwill, which will continue unabated unless enjoined by this Court. In addition, the defendants' conduct is causing monetary damage to KCF, in an amount to be proven at trial.

## COUNT FIVE

### (Common Law Unfair Competition)

57. KCF re-alleges each and every other paragraph of this Complaint.

58.   The defendants' conduct constitutes unfair competition under Illinois state law.

59.   The defendants' conduct is causing irreparable injury to KCF's reputation and goodwill, which will continue unabated unless enjoined by this Court. In addition, the defendants' conduct is causing monetary damage to KCF, in an amount to be proven at trial.

### COUNT SIX

**(Violation of Illinois Uniform Deceptive Trade Practices Act)**

60.   KCF re-alleges each and every other paragraph of this Complaint.

61.   The defendants have willfully and intentionally caused likelihood of confusion among the consuming public as to the source, sponsorship, approval or certification of the KILWINS ice cream they are selling.

62.   The defendants have willfully and intentionally caused likelihood of confusion among the consuming public as to the affiliation, connection, or association with of certification by KCF and the KILWINS franchise system in connection with their unauthorized sale of KILWINS ice cream.

63.   The defendants intentionally made misrepresentations as to the source and origin of the KILWINS ice cream they have been selling for the purpose of continuing their unauthorized sale of KILWINS ice cream.

64.   The defendants intentionally made misrepresentations of fact concerning their cessation of the sales of KILWINS ice cream for the purpose of causing KCF to forbear from filing this action.

65.   The defendants' conduct violates the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 ILCS 510/1 *et seq*.

14

66. KCF has suffered and is continuing to suffer irreparable harm as a result of the defendants' violations of IUDTPA, which will continue unabated unless enjoined by this Court.

67. KCF has also suffered monetary damage due to the defendants' violations of IUDTPA in an amount to be proven at trial.

## COUNT SEVEN

### (Fraud)

68. KCF re-alleges each and every other paragraph of this Complaint.

69. The defendants made false statements of material facts to KCF, including: (a) Imdad's statements in writing and through his counsel, that the defendants had ceased selling KILWINS brand ice cream; and (b) Imdad's statements that the source of the KILWINS brand ice cream was a truck driver who had acquired the produce in North Carolina and/or Florida.

70. The defendants knew that the statements were false.

71. The defendants made the statements for the purpose of inducing KCF to forbear from taking action to compel them to cease selling KILWINS brand ice cream and to forbear from taking action against their actual source of the KILWINS brand ice cream, a franchisee in Illinois.

72. KCF did in fact forbear from taking more immediate action to vindicate its rights, and did so until it learned that the defendants' statements were false.

73. KCF has been damaged by its reliance on the defendants' false statements and by the defendants' continuing sale of KILWINS ice cream after representing that they had ceased doing so.

## COUNT EIGHT

### (Tortious Interference with Contract)

74. KCF realleges each and every paragraph of this Complaint.

75. At all relevant times, the Illinois Franchisee had a valid contract with KCF.

76. The defendants were aware that the Illinois Franchisee had a contract with KCF that contained a restriction concerning sales to those who would resell KILWINS products at retail through channels other than KILWINS stores.

77. Through misrepresentations to the Illinois Franchisee that they were a catering company that intended to use the KILWINS ice cream that they wished to purchase, rather than a retail business that would resell KILWINS ice cream to customers, the defendants intentionally and unjustifiably induced the Illinois Franchisee to breach his Franchise Agreement with KCF.

78. The defendants' conduct caused the Illinois Franchisee to breach its Franchise Agreement with KCF.

79. KCF has suffered monetary damage as well as irreparable harm as a result of the defendants' conduct.

80. The defendants' conduct constitutes tortious interference with the Illinois Franchisee's Franchise Agreement.

WHEREFORE, KCF demands entry of judgment in its favor:

A. Preliminarily and permanently enjoining the defendants, and all those acting in concert with them, including their officers, members, agents, servants, employees, and attorneys, from:

> (i) using the KILWINS Marks in connection with the advertising, promotion or sale of any product or service;

> (ii) committing any other act that infringes the KILWINS Marks or otherwise unfairly competes with KCF or the KILWINS System;

16

(iii)     offering or selling any KILWINS brand products, including without limitation KILWINS brand ice cream;

(iv)     purchasing any KILWINS brand products for resale; and

(v)     offering or selling any KILWINS brand products, including without limitation KILWINS brand ice cream, under any other name.

B.     Ordering the defendants to file with the Court and serve on counsel for KCF, within five (5) calendar days after service of any injunction issued herein, a written report setting forth in detail, under oath, the manner and form in which they have complied with such injunction;

C.     Ordering the defendants to serve on counsel for KCF, within five (5) calendar days after service of any injunction issued herein, a statement under oath setting forth in detail:

(i)     Every purchase of KILWINS brand ice cream, including the date of each purchase; the quantity of each purchase; the amount paid for each purchase; and the name of each seller, together with any contact information that the plaintiff has for each seller;

(ii)     The amount of KILWINS brand ice cream sold, in terms of volume and dollars, under the KILWINS name; and

(iii)     The amount of KILWINS brand ice cream sold, in terms of volume and dollars, under names other than the KILWINS name.

D.     Awarding KCF, pursuant to 15 U.S.C. § 1117, (a) the defendants' profits, (b) KCF's damages, and (c) the costs of the action;

E.     Awarding KCF treble damages and attorneys' fees pursuant to 15 U.S.C. §§ 1117(a) and (b);

F.     Awarding KCF damages, costs, and attorneys' fees for the defendants' violations of the IUDTPA;

17

G.      Awarding KCF its actual damages as well as punitive damages arising out of the defendants' fraud;

H.      Awarding KCF its actual damages as well as punitive damages arising out of the defendants' tortious interference with contract;

I.      Ordering the defendants, jointly and severally, to indemnify KCF for any claims arising out their sale of KILWINS brand ice cream; and

J.      Awarding KCF such other and further relief as the Court may deem appropriate.

Respectfully submitted,

/s/ Michael J. Boxerman
Michael J. Boxerman
Míle Knabe
MARCUS & BOXERMAN
20 North Clark Street
Suite 3300
Chicago, IL   60602
Telephone:  (312) 216-2720
Facsimile:  (312) 648-6202
Email: mboxerman@marcusboxerman.com
Email: mknabe@marcusboxerman.com

and

/s/ James C. Rubinger
James C. Rubinger
(pro hac vice motion to be filed)
PLAVE KOCH PLC
3120 Fairview Park Drive
Suite 420
Falls Church, VA 22042
Telephone: (703) 774-1208
Facsimile: (703) 774-1201
Email: jrubinger@plavekoch.com

June 5, 2026          Attorneys for Plaintiff
KILWINS CHOCOLATES FRANCHISE, INC.